**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION**

HUBERT WREN                                                                                              PLAINTIFF

v.                                              No. 1:12CV00023 JLH

TRAVIS ENGLER, in his individual capacity                                                DEFENDANT

**OPINION AND ORDER**

Hubert Wren brought this action pursuant to 42 U.S.C. § 1983 against Jackson County, David Lucas in his official capacity as Sheriff of Jackson County, and Travis Engler in his individual and official capacity as Jail Administrator. Wren alleged that the defendants subjected him to cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments by deliberately disregarding his serious medical needs. The defendants moved for summary judgment. The Court granted summary judgment in favor of Jackson County, David Lucas in his official capacity, and Travis Engler in his official capacity but denied the motion as to Travis Engler in his individual capacity. At trial, Engler made a timely motion for judgment as a matter of law, which the Court took under advisement. The jury returned a verdict in favor of Wren in the amount of $5,000, and the Court entered judgment in Wren's favor, against Engler, in that amount. Engler has now filed a motion for judgment as a matter of law or for a new trial. For reasons that will be explained, the motion for judgment as a matter of law will be granted.

The Supreme Court has held that a prisoner is subjected to cruel and unusual punishment in violation of the Eighth Amendment when the prison is deliberately indifferent to the prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104-05, 97 S. Ct. 285, 291, 50 L. Ed. 2d 251 (1976). "[D]eliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Id*. at 105, 97 S. Ct. at 291. To prevail on such a claim, a plaintiff must show that

he suffered from an objectively serious medical need and the defendant knew of the need yet deliberately disregarded it. *Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2004). "A serious medical need is 'one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997) (quoting *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995)).

Moreover, "[l]iability under section 1983 requires a causal link to, and a direct responsibility for, the deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990). "A defendant will not be held liable under 42 U.S.C. § 1983 unless he was personally involved in causing the deprivation of a constitutional right or he either has or is charged with having actual knowledge that his subordinates are causing deprivations of constitutional rights." *Triplett v. Azordegan*, 570 F.2d 819, 823 (8th Cir. 1978).

Federal Rule of Civil Procedure 50 provides, in pertinent part:

> If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue the court may . . . grant a motion for judgment as a matter of law against the party on a claim or defense that, under controlling law, can be maintained . . . only with a favorable finding on that issue.

Fed. R. Civ. P. 50(a)(1). A court may grant judgment as a matter of law only when all of the evidence points one way and is susceptible to no reasonable inference sustaining the position of the nonmoving party. *Warger v. Shauers*, 721 F.3d 606, 610 (8th Cir. 2013).

Wren was incarcerated in the Jackson County Jail beginning February 23, 2009. Sometime during that evening he was bitten by a spider on his right leg, which became swollen and painful. On February 24, 2009, Wren completed a written request for medical care on a form provided to

detainees by the Jackson County Detention Center. Pl. Ex. 13. He reported on the form that he received a spider bite on his right leg. Where the form asked "For how long?" Wren wrote "two days." In the space for the time, Wren wrote "9:10," but he did not specify a.m. or p.m. Wren testified that he completed the form at 9:10 a.m. He also testified, however, that he gave the form to a jailer named Bryce Robinson. Although Robinson could not recall which shift he was working during the week of February 23, 2009, his shift logs were introduced into evidence, and all of them showed that he worked from 10:00 p.m. until 6:00 a.m.[1] Therefore, if Wren gave Robinson his medical request form to be forwarded to the proper persons, it would have been on the evening of February 24, 2009.

In February of 2009, the Jackson County Detention Center provided medical care to detainees through contracts with a nurse named Paula Breckenridge and a medical doctor named Randall Hunt. When an inmate submitted a request for medical care, Breckenridge would be contacted to come to the facility. Breckenridge testified that she received a call from someone on the evening of February 24, 2009, regarding Wren's request for medical care. She came to attend to him shortly after 4:00 p.m. on February 24, 2009. Pl. Ex. 15. She instructed the jailers to alternate giving Tylenol and Motrin to relieve Wren's discomfort. Pl. Ex. 14. She also took a photograph of the wound and emailed it to Dr. Hunt, who, on the following morning, called in a prescription for an antibiotic. Breckenridge also left instructions that if Wren's condition worsened, the jailers should take him to the hospital.

Wren's condition worsened, and the jailers took him to Harris Hospital in Newport,

---

[1] Defendant's Exhibit 4 is a group exhibit with several shift logs. Robinson's shift logs for February 23, 24, 25, and 26 are included in the exhibit. There are two different forms for each day. Robinson's shift each day is identified on one of the forms as Shift 2 and on the other as Shift 3. All of them, however, show that Robinson's shift began at 2200 hours and ended at 0600 hours.

Arkansas, on the evening of February 25, 2009. The jail shift log shows that Wren left the jail at 8:28 p.m. Pl. Ex. 15. The hospital record shows that Wren arrived at 8:45 p.m. Pl. Ex. 17A. Wren was treated at the hospital by Frances Duke, M.D. Dr. Duke made an incision in the wound, drained the discharge, packed it with antibiotic gauze, and wrote prescriptions for antibiotics and pain medication. Pl. Ex. 17B, C, D, and E. She then discharged Wren from the hospital, with instructions to change the packing in the wound in forty-eight hours and to stay off the leg and to keep it elevated. *Id*.

The pain medication and antibiotics prescribed for Wren were purchased from the pharmacy by the Jackson County Detention Center, but they were never administered to Wren. Wren testified that neither the packing inside his wound nor the bandage was ever changed. An officer named James Brock testified that he changed the bandages but admitted that he never changed the packing inside the wound and stated that he would not have been qualified to do that. For purposes of ruling on this motion, the Court accepts as true Wren's testimony that neither the bandages nor the packing were changed.

Wren's condition worsened, and on the evening of February 28, 2009, the jailers took him back to Harris Hospital.[2] Wren was then released from jail custody on his own recognizance. Pl. Ex. 20C. He was discharged from the hospital on March 5, 2009. Pl. Ex. 21E.

The central issue in the pending motion is whether Engler was aware of and deliberately disregarded Wren's serious medical needs. That issue must be considered with respect to two distinct periods of time—the time between Wren's request for medical care and his first trip to the hospital and the time between his return to the jail and his second trip to the hospital. As to the first

---

[2] A jail record says that Wren left the jail at approximately 10:44 p.m. on February 28. Pl. Ex. 20A. The hospital record shows that he was admitted at 1:15 a.m. on March 1. Pl. Ex. 21A.

4

period, Wren contends that there was an undue delay in his receiving medical attention. As to the second period of time, Wren contends that his medical needs were disregarded because the bandages and packing for his wound were not changed per Dr. Duke's instructions and because he never received the medications that had been prescribed for him.

With respect to the period before Wren went to the hospital the first time—on the evening of February 25, 2009—there is no evidence that Engler was aware of and deliberately disregarded Wren's serious medical needs. As noted, Wren completed a medical request sometime on February 24. According to Wren, he gave that request to Bryce Robinson to be delivered to the appropriate officials. The evidence established that Robinson worked from 10:00 p.m. to 6:00 a.m. during the time in question. Nurse Breckenridge testified that someone called her from the jail on the evening of February 24. Engler worked from 8:00 a.m. until 4:00 or 5:00 p.m.[3] Assuming that the request for medical care was brought to Engler's attention, he would have first learned of it on the morning of February 25. Breckenridge came to the facility to attend to Wren on the afternoon of February 25. She took what she thought was the appropriate action to attend to Wren's medical needs, and as a part of her actions she left instructions for Wren to be taken to the hospital if his condition worsened. His condition did worsen, and he was taken to the hospital on the evening of February 25. Thus, there is no evidence that Engler knew of and deliberately disregarded Wren's medical needs prior to Wren being taken to the hospital on the evening of February 25.

As noted, after returning to the jail on February 25, Wren never received the antibiotics and pain medication that were prescribed to him, and his bandage and packing were not changed within forty-eight hours after his release from the hospital. In response to the motion for summary

---

[3] Engler first testified that he worked from 8:00 a.m. until 5:00 p.m. and, later, that he worked from 8:00 a.m. to 4:00 p.m.

5

judgment, Wren presented the affidavit of Bryce Robinson stating that Robinson told Engler about Wren's condition. At trial, however, Robinson recanted that testimony and testified that he could not recall whether he had spoken with Engler about Wren. Robinson testified that he spoke to someone, and he had assumed when he executed his affidavit that he spoke with Engler because that is a person to whom he usually spoke when inmates had complaints, but he could not recall whether he had spoken with Engler about Wren.[4] Again, Robinson's jail logs were introduced into evidence, and they showed that Robinson worked from 10:00 p.m. to 6:00 a.m. during the week in question, while Engler worked from 8:00 a.m. to 4:00 or 5:00 p.m. Thus, there is no evidence from which a reasonable jury could conclude that Robinson told Engler about Wren's medical needs.

Nor did Wren complete a request for medical care form anytime after he returned to the jail from the hospital on the evening of February 25. Wren was aware that he had the right to fill out a request for medical care, but he did not do so. Had one been completed, in the ordinary course of business it would have found its way to Engler, but that did not happen.

The only other evidence presented at trial regarding Engler's potential knowledge is an incident recounted by Wren that occurred sometime after Wren returned from the hospital. According to Wren's trial testimony, someone came back into the detention facility and saw that he had two mats, one of which was for elevating the injured leg. According to Wren, this person said that the jail administrator did not like him having two mats and took the second mat after flashing a taser. At the time, Wren did not know who that person was, but upon seeing him later, he realized that it was Engler. Engler denied that the incident occurred and testified that it could not have

---

[4] In Robinson's aforementioned affidavit, Robinson stated that he told Engler about Wren's need to go to the hospital prior to Wren's February 25 hospital visit. Document #18-1 at 12-13. Robinson did not state that he told Engler anything about Wren's condition after the February 25 hospital visit, only that he brought Wren's complaints to the attention of unnamed jail officials. *Id*.

occurred because in February 2009 the jailers had not been issued tasers. Nevertheless, assuming that the incident happened as described by Wren, it still does not establish that Engler knew that Wren was not receiving his medications or that his bandage and packing were not being changed. Wren did not testify that he told Engler about his need for medications or his need for having his bandage and packing changed. Indeed, he testified that he never spoke to Engler at all. Assuming the incident occurred as Wren testified, Engler saw Wren's bandaged leg, but, since Wren did not tell him, Engler would not have known that Wren was not receiving his medications or that his bandage and packing were not being changed.

In short, after Wren returned from the hospital, he never completed a request for medical care form and he never informed Engler that he was not receiving his medication or that the packing and bandage were not being changed according to Dr. Duke's instructions. Nor is there any evidence that someone else informed Engler that Wren was not receiving his medication and that his bandages and packing were not being changed. Thus, there is no evidence from which a jury reasonably could conclude that Engler knew of Wren's serious medical needs and deliberately disregarded them.

Travis Engler's motion for judgment as a matter of law is therefore granted. Document #35. The motion for a new trial is denied as moot. Wren's motion for attorneys' fees and costs is denied as moot. Document #39.

IT IS SO ORDERED this 30th day of September, 2013.

_J. Leon Holmes_

J. LEON HOLMES
UNITED STATES DISTRICT JUDGE